```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| INTERNET PIPELINE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| APLIFI, INC. | : | NO. 10-6089 |

MEMORANDUM

Bartle, J.                                          September 29, 2011

Plaintiff Internet Pipeline, Inc. ("iPipeline") has sued defendant Aplifi, Inc. ("Aplifi") for infringement of U.S. Patent No. 7,689,444 entitled "Electronic Insurance Application Fulfillment System and Method" (the "'444 patent"). It describes a system and method for generating insurance pre-applications. Before the court is the motion of iPipeline to dismiss its complaint as well as the counterclaims of Aplifi for lack of subject matter jurisdiction under Rules 12(h)(3)[1] and 41(a)(2)[2] of the Federal Rules of Civil Procedure. iPipeline contends its recent covenant not to sue Aplifi for patent-infringement divests the court of jurisdiction under Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1059 (Fed. Cir. 1995).

---

1. Rule 12(h)(3) of the Federal Rules of Civil Procedure provides: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

2. Rule 41(a)(2) provides: "[A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."

iPipeline filed its complaint on November 8, 2010 against Aplifi, then known as Blue Frog Solutions, Inc.  Aplifi timely filed an answer, which included a number of affirmative defenses and three counterclaims.  The affirmative defenses include patent invalidity, unclean hands, and patent misuse.  The first counterclaim seeks a declaratory judgment of non-infringement and the second a declaratory judgment of patent invalidity.  In the third counterclaim, Aplifi pleads patent misuse.  It asserts that "iPipeline initiated this suit without due and proper investigation, and knew or should have known that no product or activity of Blue Frog was within the scope of any valid patent claim of the '444 patent and asserted same against Blue Frog nonetheless for improper anti-competitive purpose."  iPipeline's answer denying these counterclaims followed.

On August 11, 2011, iPipeline sent Aplifi an email containing a covenant not to sue.  The covenant states in full:

> Pursuant to Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995), Plaintiff Internet Pipeline, Inc. ("iPipeline"), on behalf of itself and any successors-in-interest to United States Patent No. U.S. Patent No. [sic] 7,689,444 (the "'444 patent"), makes the following covenant not to sue for the purpose of resolving all issues in this litigation. Defendant's counsel has represented to iPipeline's counsel that the only pre-applications, drop tickets, or other carrier forms used in connection with Defendant's accused Affirm for Life system are "carrier-specific."  Based on this representation, iPipeline hereby unconditionally and irrevocably covenants not to assert patent infringement (including direct infringement, contributory infringement, and inducing

>  infringement) against Defendant Aplifi, Inc.
>  (f/k/a Blue Frog Solutions, Inc.) and its
>  direct or indirect subsidiaries under claim 1
>  of the '444 patent based upon their making,
>  using, manufacturing, development, design,
>  marketing, licensing, distributing,
>  importing, offering for sale, or selling of
>  any of their product(s) as they exist today
>  or have existed in the past.

iPipeline made this covenant after Aplifi demonstrated for iPipeline how its Affirm for Life system works and after Aplifi's counsel represented that the system uses only "carrier-specific" pre-application forms, which differ from the "insurance-company independent" forms claimed by the '444 patent.

In Super Sack, the plaintiff had sued the defendant for patent infringement, and the defendant filed a counterclaim seeking a declaratory judgment of noninfringement and patent invalidity. Super Sack, 57 F.3d at 1055.  While the suit was pending, the plaintiff filed a motion to dismiss, in which it stated that it "will unconditionally agree not to sue [the defendant] for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by [the defendant]." Id.  The plaintiff argued that by promising not to sue the defendant for patent infringement, the court was divested of subject matter jurisdiction not only over the infringement claim in the complaint but also over the declaratory judgment counterclaims. Id.  The district court subsequently granted the plaintiff's motion to dismiss for lack of any actual controversy as required by Article III of the Constitution. Id. at 1057.

The Federal Circuit affirmed that subject matter jurisdiction did not exist over the plaintiff's claims and the defendant's declaratory judgment counterclaims if the plaintiff promises not to pursue its claims for patent infringement. Id. at 1059-60. The Super Sack court explained that Article III of the Constitution requires the existence of an "actual controversy" between parties in order for a court to have subject matter jurisdiction. Further, it noted that under the Declaratory Judgment Act, a court may only declare the rights and other legal relations of any interested party "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007).

In the patent context, "if ... a party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support jurisdiction at that time." Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 96 (1993). In Super Sack, however, the Federal Circuit held that a covenant not to sue for infringement eliminates a court's subject matter jurisdiction over any affected claim, including any related declaratory judgment counterclaims. Super Sack, 57 F.3d at 1059. Once there is no threat of an infringement action, the allegedly infringing party no longer has any viable interest in defeating or restricting the patent. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Aplifi argues that iPipeline's covenant not to sue on the '444 patent does not divest the court of jurisdiction under Super Sack.[3]  First, it contends that iPipeline's covenant does not comply with Super Sack because it is contingent on the representation of iPipeline's counsel.  We are not persuaded that a covenant based on the representation of Aplifi's counsel creates any likelihood that iPipeline will sue Aplifi on the '444 patent in the future.  A district court in our circuit reached the same result and dismissed a case for lack of subject matter jurisdiction under Super Sack based on a covenant not to sue that included the following representation:  "WHEREAS, MBI has represented to Ovonic that model MHI-BX is the only EV battery that it intends to import into and sell or offer for sale in the U.S. ..."  Matsushita Battery Indus. Co. v. Energy Conversion Devices, No. 96-101, 1997 U.S. Dist LEXIS 21016, at *8, *21 (D. Del. Dec 23, 1997).  During oral argument, in order to allay Aplifi's concerns, iPipeline's counsel stipulated that iPipeline would amend the covenant to state that it was based on the representation of Aplifi itself, instead of its counsel.  We will deem the covenant to have been amended accordingly.  Predicating the covenant on the representations of Aplifi or its counsel does not make the covenant defective under Super Sack.

---

3. In its brief on the issue, one of Aplifi's arguments was that the covenant not to sue is not commensurate with the scope of the allegations in the complaint because the covenant not to sue is limited to Aplifi's Affirm for Life system even though the complaint is broader.  Aplifi conceded at oral argument, however, that the covenant is commensurate with the complaint.

Aplifi also contends in opposition to iPipeline's motion to dismiss that preservation of evidence is needed to avoid legal prejudice.  Aplifi is concerned that it will be involved in future litigation with iPipeline regarding a pending patent application of iPipeline.  According to Aplifi, the action should continue so that it may obtain prior art discovery regarding this pending patent because the evidence goes back ten or more years and will be increasingly difficult to obtain if litigation between the parties occurs down the road.  Aplifi's desire to preserve evidence for possible future suits, however, does not provide the court with subject matter jurisdiction.  It is well settled that "an actual controversy cannot be based on a fear of litigation over future products."  See Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855-56 (Fed. Cir. 1999) (citing Super Sack, 57 F.3d at 1060).

Aplifi further argues that even if jurisdiction is lacking over its declaratory judgment counterclaims, its counterclaim for patent misuse, which it does not specifically identify as a declaratory judgment action, should still stand. The Federal Circuit has characterized patent misuse as "the patentee's act of 'impermissibly broaden[ing] the physical or temporal scope of the patent grant with anticompetitive effect.'" Princo Corp. v. Int'l Trade Comm'n, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (en banc) (citing Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1001 (Fed. Cir. 1986).  The court further explained, "When the patentee has used restrictive conditions on

licenses or sales to broaden the scope of the patent grant, we have held that an accused infringer may invoke the doctrine of patent misuse to defeat the patentee's claim." Princo, 616 F.3d at 1327 (citations omitted).

iPipeline maintains that patent misuse can only be used as an affirmative defense and not a counterclaim. The Federal Circuit, however, has determined that there can be a counterclaim for patent misuse in the appropriate case. Glitsch, Inc. v. Koch Eng'g Co., 216 F.3d 1382, 1386 (Fed. Cir. 2000). That said, a counterclaim of patent misuse may only seek declaratory relief, not monetary damages, because patent misuse only renders the patent unenforceable. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1427 (Fed. Cir. 1997). Since Aplifi may not recover patent misuse damages, and at most all it could ever obtain in such a counterclaim is declaratory relief, Aplifi's patent misuse counterclaim falls as a result of iPipeline's covenant not to sue.

An actual controversy does not currently exist between iPipeline and Aplifi over the '444 patent because iPipeline covenants not to proceed with its infringement claim and the possibility of future litigation over a separate pending patent application is not only hypothetical and speculative but irrelevant. Accordingly, this court lacks subject matter jurisdiction over the plaintiff's complaint, the defenses thereto, and the defendant's declaratory judgment counterclaims, including the counterclaim for patent misuse.

As part of the relief in its counterclaims, Aplifi seeks an award of reasonable attorneys' fees under the Patent Act fee shifting provision, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Aplifi argues that even if the court otherwise dismisses iPipeline's claims and Aplifi's counterclaims, the court retains subject matter jurisdiction over whether Aplifi is entitled to attorneys' fees against iPipeline for suing it.

In Cooter & Gell v. Hartmarx Corp., the Supreme Court reiterated the "well established" law "that a federal court may consider collateral issues after an action is no longer pending." 496 U.S. 384, 395 (1990). District courts may thus award attorneys' fees after an action is dismissed for want of jurisdiction when the motions for attorneys' fees are "independent proceedings supplemental to the original proceeding and not a request for a modification of the original decree." Id. (citing Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 170 (1939)). This rule has been followed by the Federal Circuit after cases have been dismissed under Super Sack. See Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1032 & n.1 (Fed. Cir. 2006); Monsanto Co. v. Bayer Bioscience N.V., 514 F.3d 1229, 1242 (Fed. Cir. 2008). The Federal Circuit has explained that a district court retains jurisdiction over a request for attorney fees under 35 U.S.C. § 285 even when all claims and counterclaims are dismissed under Super Sack because "a claim for attorney fees

under § 285 is independently within the district court's federal question jurisdiction."  Highway Equip. Co., 469 F.3d at 1032 (citing H.R. Tech., Inc. v. Astechnologies, Inc., 275 F.3d 1378, 1386 (Fed. Cir. 2002)).

      Although we are dismissing iPipeline's claims and Aplifi's counterclaims in their entirety under Super Sack, this does not prevent Aplifi from filing any motion for attorneys' fees under § 285.  We, of course, do not opine here on the merits of any such motion.

      Finally, Aplifi requests that if the court dismisses the counterclaims, it should do so without prejudice because a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits.  In its reply memorandum, iPipeline states that it does not object to dismissing the counterclaims without prejudice.  Accordingly, we will dismiss the counterclaims without prejudice.